**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CASE NO. 1:15-CV-00171-RLV**

| | |
|---|---|
| BARBARA J. BAILES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER IS BEFORE THE COURT** on cross-motions for summary judgment. (Docs. 9, 11). For the reasons that follow, the Plaintiff's Motion for Summary Judgment (Doc. 9) is **DENIED**, the Defendant's Motion for Summary Judgment (Doc. 11) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

**I.  BACKGROUND**

In May 2012, Plaintiff Barbara J. Bailes filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, alleging an inability to work due to a disabling condition commencing on January 9, 2012. (Tr. 73, 198-215). The Commissioner of Social Security ("Commissioner" or "Defendant") initially denied Plaintiff's application on August 7, 2012 and, upon reconsideration, again denied the application on October 17, 2012. (Tr. 73, 91-96, 98-115). Plaintiff requested a hearing and, on January 3, 2014, appeared

by video conference before Administrative Law Judge David S. Pang ("ALJ Pang").[1]  (Tr. 11-25, 73, 124-25).

Through a written decision, ALJ Pang concluded that Plaintiff was not disabled.  (Tr. 73-83).  At Step One, ALJ Pang found that Plaintiff's earnings subsequent to her alleged disability onset date did not rise to the level of substantial gainful activity.  (Tr. 75).  At Step Two, ALJ Pang found that Plaintiff suffered from two severe impairments: spinal degenerative disc disease and chronic back pain.  *Id.*  ALJ Pang, however, found that Plaintiff's alleged impairments of anxiety, depression, pneumonia, dyspnea, diarrhea, iron depletion, gastroesophageal reflux disease, urinary tract infection, lupus, reflux, benign hypertension, and osteoarthritis did not qualify as severe.  (Tr. 76-77).  Specific to Plaintiff's anxiety and depression, ALJ Pang noted that (1) Plaintiff suffered from these disorders prior to 2012 and worked while suffering from them; (2) Plaintiff's anxiety and depression were controlled by medication; (3) Plaintiff did not seek treatment from a mental health specialist; and (4) "throughout 2013, [Plaintiff's] mental status examinations note her for intact cognition, appropriate mood and affect and normal judgment."  (Tr. 76).  ALJ Pang also applied the psychiatric review technique, concluding that Plaintiff did not experience any episodes of decompensation and that Plaintiff's anxiety and depression "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities" and "cause no more than 'mild' limitations in any of the . . . functional areas."  (Tr. 76-77).  At Step Three, ALJ Pang determined that Plaintiff's conditions did not meet any of the Listings, specifically finding that Plaintiff's degenerative disc disease and chronic back pain did not meet Listing 1.04 because the conditions did not compromise Plaintiff's nerve root or spinal cord.  (Tr. 78).

---

[1] ALJ Pang conducted the hearing via video conference because he is based in Baltimore, Maryland.  (Tr. 11).  Plaintiff testified from a Social Security office in Charlotte, North Carolina.  *Id.*

ALJ Pang then commenced his residual functional capacity assessment by summarizing Plaintiff's hearing testimony, Plaintiff's medical records, and the consultative exam findings of Dr. Albert Whitaker. (Tr. 78-81). ALJ Pang concluded that Plaintiff's testimony was "not entirely credible" as to the "intensity, persistence and limiting effects of [her] symptoms." (Tr. 79). Regarding Plaintiff's medical records, ALJ Pang noted that Plaintiff experienced only mild lumbar restrictions and did not have any musculature issues following a 2010 incident that exacerbated her preexisting back problems and that Plaintiff cited in her hearing testimony as "a significant occurrence" that made her back problem "a thousand times worse" and precipitated her not being able to work by 2012. *Id.*; (*see also* Tr. 15-16 (Plaintiff's testimony regarding 2010 event)). ALJ Pang noted that Plaintiff's condition worsened in March 2012, by which time she was diagnosed with degenerative disc disease. (Tr. 79). ALJ Pang noted, however, that Plaintiff did not seek follow up care for her back issues in the months following being diagnosed with degenerative disc disease, and that Dr. Whitaker's 2012 consult exam findings showed that Plaintiff had relatively normal range of motion and normal sensation. *Id.* ALJ Pang also summarized Dr. Whitaker's conclusion that restrictions for walking up to six hours a day, for lifting up to thirty pounds, and for bending, stooping, crouching, and manipulation would address the limitations resulting from Plaintiff's back issues. (Tr. 79-80). ALJ Pang contrasted Dr. Whitaker's modest set of restrictions with the "extreme limitations" advanced by Dr. Larry Smith, Plaintiff's treating physician. (Tr. 80-81). ALJ Pang concluded that Dr. Smith's assessment was inconsistent with Plaintiff's reported daily activities, Plaintiff's ability to drive to the hearing, and the course of treatment prescribed by Dr. Smith. *Id.*

In forming Plaintiff's residual functional capacity, ALJ Pang relied on Plaintiff's back pain and knee pain as a basis for limiting her to light work, with a restriction for only occasional

stooping, kneeling, crouching, and crawling. (Tr. 80). ALJ Pang further relied on Plaintiff's back pain and knee pain, as well as her history of falls, to include a restriction for only occasional climbing of ramps and stairs and a total restriction for climbing ladders, ropes, and scaffolds. *Id*. Separately, ALJ Pang relied on Plaintiff's neck pain, self-reports of poor handling, and Dr. Whitaker's opinion to include a restriction for only frequent handling and fingering. *Id*. ALJ Pang concluded that further physical limitations were "not required" based on Plaintiff's self-reported daily activities and Dr. Whitaker's evaluation. *Id.* Finally, regarding Plaintiff's affective disorders—depression and anxiety—ALJ Pang reiterated that Plaintiff did not seek mental health treatment and credited Dr. W.W. Albertson's opinion that Plaintiff's mental disorders were not severe and did not necessitate the incorporation of any mental restrictions into Plaintiff's residual functional capacity. (Tr. 80-81; *see also* Tr. 62-63).

For purposes of Step Four, ALJ Pang, relying on the testimony of a vocational expert, concluded that Plaintiff's residual functional capacity did not permit her to return to her prior work as a licensed practical nurse. (Tr. 82). However, at Step Five, and again relying on the testimony of a vocational expert, ALJ Pang concluded that Plaintiff had transferrable job skills and that her residual functional capacity permitted her to perform the duties of a first aide attendant, DICOT 354.667-010, nursery school attendant, DICOT 359.677-018, and medical lab technician, DICOT 078.381-014. (Tr. 82-83). Accordingly, ALJ Pang concluded that Plaintiff was not disabled for purposes of receiving benefits under Titles II and XVI of the Social Security Act. (Tr. 83).

Plaintiff requested review of ALJ Pang's adverse decision before the Appeals Council but the Appeals Council denied the request. (Tr. 1-3, 7). Plaintiff initiated this action seeking judicial review of ALJ Pang's decision and both Plaintiff and the Commissioner have filed their respective motions and supporting memorandums for summary judgment. (Docs. 9-12).

4

## II. DISCUSSION

### A. Standard of Review

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that her decision is supported by substantial evidence, the Commissioner's determination may not be overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established," *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (brackets and internal quotation marks omitted). Critically, "[t]he substantial evidence standard 'presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (ellipsis omitted) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). Consequently, as long as the judgment is explained and supported by

5

substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, 907 F.2d at 1456. Therefore, the issue before this Court is not whether Plaintiff *is* disabled, but whether ALJ Pang's conclusion that Plaintiff is *not* disabled is explained and *supported by substantial evidence* and that such decision was reached based upon a correct application of the relevant law.

B.  Analysis

In her motion for summary judgment, Plaintiff raises three assignments of error: (1) ALJ Pang erred in forming Plaintiff's residual functional capacity when he gave significant weight to Dr. Whitaker's opinion and some weight to Dr. Smith's opinion, but did not explain why he did not include all of the limitations in Dr. Whitaker's and Dr. Smith's evaluations; (2) ALJ Pang erred by not including any restrictions in Plaintiff's residual functional capacity to account for the mental limitations he identified at Step Two of the disability analysis; and (3) ALJ Pang failed to explain his credibility determination, using only boilerplate language to find Plaintiff "not entirely credible." Because an administrative law judge must assess a claimant's credibility before forming the claimant's residual functional capacity, *see Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015), the Court will consider Plaintiff's third assignment of error before Plaintiff's first and second assignments of error.

i.  *Credibility Determination*

The law provides a two-part test for evaluating the probative weight to be assigned to a claimant's statements about symptoms and pain. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). First, there must be "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce

6

the pain or other symptoms alleged." *Id.* at 594 (quotation marks, citations, and emphasis omitted). If the administrative law judge determines that such an impairment exists, the second part of the test then requires the administrative law judge to consider all available evidence, including the claimant's statements about limitations and about pain, in order to determine whether the person is disabled. *Id.* at 595-96; 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

While an administrative law judge must consider a claimant's statements during the second part of the analysis, he need not credit them to the extent they conflict with the objective medical evidence of record. *Craig*, 76 F.3d at 595-96. Relevant evidence for this inquiry includes the claimant's "medical history, medical signs, and laboratory findings," *id.* at 595, as well as various regulatory factors,[2] Social Security Regulation ("SSR") 96-7p, 1996 WL 374186 at *3.[3] Although the administrative law judge must consider each of the relevant factors, "[t]he regulations do not mandate that the [administrative law judge] discuss all these factors in a decision." *Allmon v. Colvin*, 2016 WL 6651326, at *2 n.4 (M.D.N.C. Nov. 10, 2016).

An administrative law judge's credibility determination is generally entitled to great deference. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). This is because a reviewing court does not, and cannot, make credibility assessments. *See Craig*, 76 F.3d at 589. However, when considering whether the ALJ properly analyzed a claimant's credibility, the district court

---

[2] The regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).
[3] Subsequent to Plaintiff filing her complaint and her motion for summary judgment, the Social Security Administration superseded SSR 96-7p with SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Social Security Ruling 16-3p eliminates the use of the term "'credibility' from . . . sub-regulatory policy" and "clarify[ies] that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *1. Because SSR 96-7p was in effect at the time of ALJ Pang's decision, this Court will review the decision under SSR 96-7p. *See Keefer v. Colvin*, 2016 WL 5539516, at *11 n.5 (D.S.C. Sept. 30, 2016).

must determine if the reasons the ALJ provided for discrediting the claimant's testimony explain the extent to which the ALJ credited and discredited the claimant's testimony. *See Mascio*, 780 F.3d at 639-40; *see also Monroe v. Colvin*, 826 F.3d 176, 188-90 (4th Cir. 2016). Put another way, the ALJ's discussion of the claimant's credibility in light of the other evidence in the record must establish an "'accurate and logical bridge'" to the ALJ's decision to credit or discredit the relevant aspects of the claimant's testimony. *See Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

Plaintiff contends that ALJ Pang used improper boilerplate language when assessing Plaintiff's credibility and otherwise failed to adequately explain why, and to what extent, he found Plaintiff "not entirely credible." (Doc. 10 at 16-20). The Commissioner responds that, although ALJ Pang used boilerplate language, he subsequently relied on Plaintiff's treatment notes, the results of objective medical tests, and the opinion of Dr. Whitaker to discredit Plaintiff's testimony about the extent of her pain, symptoms, and resulting limitations. (Doc. 12 at 14-19).

This Court's review of ALJ Pang's decision causes it to agree with the Commissioner. Although ALJ Pang used boilerplate language at the outset of his discussion of Plaintiff's hearing testimony and medical records, his discussion of Plaintiff's medical records provides a logical bridge for his adverse credibility determination regarding Plaintiff's statements about the extent of her pain, symptoms, and resulting limitations. Specifically, while Plaintiff testified that she was in too much pain to work, ALJ Pang discussed treatment notes from 2013 showing that her complaints of knee pain were unsubstantiated on exam and that, while her most recent exam noted a complaint of back pain while bending, she maintained full range of motion in her back. (*See* Tr. 80). Dr. Whitaker's opinion, which ALJ Pang discussed and afforded significant weight, advanced the conclusion that many of Plaintiff's alleged limitations were not supported by his physical

examination of Plaintiff and that Plaintiff suffered from far lesser limitations than she asserted. (*See* Tr. 80; *see also* Tr. 470-72). ALJ Pang also relied on Plaintiff driving to the hearing and notations in Plaintiff's medical records about her sitting with ease to discredit her claim that she could not sit or stand for more than fifteen minutes at a time. (Tr. 80-81, *see also* Tr. 470). Finally, ALJ Pang's comments about Plaintiff not seeking follow up care for her degenerative disc disease in 2012 and her failure to ever seek mental health treatment support ALJ Pang's adverse credibility determination as to the extent of Plaintiff's claimed pain, symptoms, and resulting limitations. (Tr. 79-81); *see Burton v. Colvin*, 2016 WL 7209642 (D.S.C. Dec. 13, 2016) (holding that administrative law judge may rely on claimant's failure to seek treatment as one factor for finding claimant not credible as to allegations of pain and limitations); *see also Hunter v. Sullivan*, 993 F.2d 31, 36 (4th Cir. 1992). In sum, ALJ Pang explained his credibility determination when, after discussing some of Plaintiff's medical record and Dr. Whitaker's opinion, he stated "[a]lthough [Plaintiff] reported all around pain, her objective tests only supported minor issues." (Tr. 80); *see Craig*, 76 F.3d at 595-96.

Plaintiff, seemingly in the alternative, argues that some of the evidence ALJ Pang relied on for his credibility determination was speculative or insufficient to provide substantial evidence for ALJ Pang's credibility determination. (Doc. 10 at 18-19). First, Plaintiff argues that ALJ Pang improperly relied on Plaintiff's self-reported daily activities of sweeping, mopping, and vacuuming to conclude that Plaintiff could work an eight-hour day five days a week. *Id.* (citing Tr. 79). Plaintiff's argument mischaracterizes ALJ Pang's decision. ALJ Pang did not rely on Plaintiff's self-reported daily activities to discredit Plaintiff's testimony about not being able to work a full day. (*See* Tr. 79). Instead, ALJ Pang relied on Plaintiff's self-reported activities to discredit Plaintiff's testimony about performing few activities and doing no chores. *Id.*; (*see* Tr.

9

19 (Plaintiff's hearing testimony where she denies doing household chores)). ALJ Pang also relied on Plaintiff's daily activities, in combination with medical exam notations, to discredit Plaintiff's claim that she had significant exertional and postural limitations. (Tr. 79). Accordingly, it was within reason for ALJ Pang to rely on Plaintiff's daily activities in so far as they discredited her claims regarding the extent of her pain, symptoms, and resulting limitations.

Second, Plaintiff argues that ALJ Pang speculated when he concluded that Plaintiff did yard work after her alleged disability onset date and up until 2013. (Doc. 10 at 19 (citing Tr. 80)). As an initial matter, although an administrative law judge may err in assessing one aspect of the record relative to the claimant's credibility, the error is harmless "so long as there remains substantial evidence supporting the [administrative law judge's] conclusions on credibility and the error does not negate the validity of the [administrative law judge's] ultimate credibility conclusion." *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks and brackets omitted). Here, ALJ Pang's discussion of Plaintiff's medical records and Dr. Whitaker's opinion renders any error in assessing whether Plaintiff did yard work after her alleged disability onset date harmless. Separately, the notation in Plaintiff's medical records relied on by ALJ Pang, when read in context with notations from early doctor visits, generally supports the proposition that Plaintiff did yard work after her alleged disability onset date. The notation at issue stemmed from Plaintiff's January 25, 2013 visit with Dr. Smith and discusses the progression of Plaintiff's difficulty with mobility to the point that she can no longer do yard work. Where Plaintiff's alleged disability onset date predated this doctor visit by just over one year, it follows that Plaintiff did some yard work after her alleged disability onset date and up until 2013.[4]

---

[4] Plaintiff's preceding visit with Dr. Smith was on November 1, 2012 and the record from that visit includes notations on Plaintiff's complaints about muscle aches, joint arthralgias, and depression and Dr. Smith's recommendation that Plaintiff "get out and do something." (Tr. 495, 497). The medical records from Plaintiff's November 1, 2012 visit,

Third, Plaintiff argues that ALJ Pang speculated on the side effects of Plaintiff's medications and announced inconsistent findings regarding the sleep issues Plaintiff was experiencing. (Doc. 10 at 19). Plaintiff further complains that ALJ Pang did not question her on either of these subjects during her hearing. *Id.* It is not apparent that ALJ Pang committed any error when discussing the side effects Plaintiff experienced from medication. Notably, ALJ Pang relied on the relative absence of any reports by Plaintiff to her doctors about side effects, save one occasion where she indicated that she experienced headaches from one of her medications. (Tr. 80). The lack of notations in the medical records about reported side effects from medication is a justifiable basis to conclude, in the absence of evidence to the contrary, that Plaintiff did not suffer significant side effects.[5] *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (identifying "the absence of objective medical evidence to support the claimant's complaints" as factor an administrative law judge may consider in assessing claimant's credibility (internal quotation marks omitted)).

As to Plaintiff's issues sleeping, ALJ Pang's discussion of this matter reads: "With regard to her allegations of poor sleep, the claimant was noted as taking Ambien and since 2013, she did consistently report issues of poor sleep or increased medication. As such, she does not require any sleep related restrictions." (Tr. 80 (citing Tr. 488-530)). ALJ Pang's statements are inconsistent and it appears that he omitted language from one of the sentences in his discussion of the possible sleep issue. *See id.* However, since ALJ Pang's other reasoning provides substantial evidence for

---

however, do not include any notation about a reduction in mobility preventing Plaintiff from doing yard work. *See id.*

[5] Plaintiff does not cite any notations in her medical records that discuss side effects. (*See* Doc. 10 at 19). Furthermore, given the apparent absence of evidence of side effects from medication, ALJ Pang had no reason to question Plaintiff on this subject and, if Plaintiff believed that side effects from medication was an important matter to present to ALJ Pang, Plaintiff's representative at the administrative hearing could have posed questions to her on this subject.

11

his adverse credibility determination, any error with respect to his assessment of Planitiff's credibility based on her sleep issues is harmless.[6] *See Carmickle*, 533 F.3d at 1162.

      ii.      *Limitations in Medical Opinions*

First, Plaintiff contends that the residual functional capacity formulated by ALJ Pang is inconsistent with the opinion of Dr. Whitaker, to which ALJ Pang gave significant weight. (Doc. 10 at 5-7). Specifically, Plaintiff contends that Dr. Whitaker's opinion included limitations for bending, reaching, feeling, and grasping but that ALJ Pang, without a proper explanation, did not include any of these limitations in Plaintiff's residual functional capacity. *Id.* at 6-7.

Looking at Plaintiff's ability to bend, Dr. Whitaker's opinion states, "[w]ith the objective findings of low back pain and bilateral knee pain, postural limitations on bending, stooping and crouching could be expected." (Tr. 472). ALJ Pang noted Dr. Whitaker's opinion as to bending, stooping, and crouching and then discussed Plaintiff's ability to fully bend during subsequent examinations. (*See* Tr. 79-81 ("Even when she reported pain, her examinations indicates she could fully bend.")). Based on Plaintiff's reports of pain, ALJ Pang included a restriction for only occasional stooping, kneeling, crouching, and crawling. (Tr. 80). This Court concludes that this restriction adequately accounts for Dr. Whitaker's prediction that Plaintiff might experience limitations as to bending. As argued by the Commissioner, within the social security disability context, "stooping" and "crouching" are forms of bending. "Stooping" is defined as "a type of bending in which a person bends his or her body downward and forward by bending the spine at

---

[6] The Court notes that Plaintiff only challenges ALJ Pang's discussion of her issues concerning sleeping relative to ALJ Pang's adverse credibility determination and does not argue that ALJ Pang erred by not including a restriction in Plaintiff's residual functional capacity accounting for any sleep issues. (*See* Doc. 10 at 19; *see also id.* at 5-20). Accordingly, any argument Plaintiff could have raised regarding ALJ Pang's residual functional capacity assessment relative to her sleep issues is waived. *See Taylor v. Astrue*, 2012 WL 909506, at *4 (W.D.N.C. Mar. 16, 2012) (Voorhees, J.); *see also Tomblin v. Barnhart*, 141 F. App'x 181, 182 (4th Cir. Aug. 18, 2005) ("Tomblin submitted a counseled brief in the district court that did not raise this issue. Accordingly, we conclude that Tomblin has waived this claim.").

the waist." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (1983); *see also* SSR 85-15, 1985 WL 56857, at *7 (defining "stooping" as "bending the body downward and forward by bending the spine at the waist"). "Crouching" is defined as "bending both the legs and spine in order to bend the body downward and forward." SSR 83-10, 1983 WL 31251, at *6. Courts considering the difference between stooping and bending have drawn no distinction; instead, concluding that the Social Security Rulings use the terms interchangeably and that a restriction for one motion covers limitations as to the other motion. *Harrington v. Astrue*, 2008 WL 819035, at *4 (M.D.N.C. 2008) (citing *Bagwell v. Barnhart*, 338 F. Supp.2d 723, 734 (S.D. Tex. 2004)) (magistrate judge's memorandum and recommendation adopted by order dated May 15, 2009); *see also Chester v. Callahan*, 193 F.3d 10, 13 n.1 (1st Cir. 1999) ("The ability to stoop incorporates the ability [to] bend."); SSR 85-15 1985 WL 31251, at *7 (identifying stooping, kneeling, crouching, and crawling as "progressively more strenuous forms of bending parts of the body" within the context of postural limitations). Accordingly, ALJ Pang's restrictions for stooping and crouching adequately addressed Dr. Whitaker's opinion that Plaintiff could be expected to experience limitations as to bending.

Turning to Plaintiff's ability to reach, feel, and grasp, Dr. Whitaker's opinion states, "[w]ith the subjective complaint of neck pain on reaching and lifting, manipulative limitations on reaching, handling, feeling, grasping and fingering could be expected." (Tr. 472). ALJ Pang noted that Dr. Whitaker "felt [Plaintiff] would have issues with manipulation." (Tr. 80). To account for Plaintiff's neck pain, ALJ Pang included a restriction for only frequent handling and fingering. *Id*. ALJ Pang, however, concluded that further limitations were not needed because Plaintiff's "objective tests only supported minor issues." *Id.*

With respect to Plaintiff's argument that ALJ Pang should have included a restriction for grasping, much like ALJ Pang's inclusion of postural limitations for stooping and crouching covered limitations as to bending, ALJ Pang's inclusion of a restriction for handling covered limitations as to grasping. Social Security Ruling 85-15 defines "handling" as "seizing, holding, *grasping*, turning or otherwise working primarily with the whole hand or hands." SSR 85-15, 1985 WL 31251, at *7 (emphasis added). Accordingly, any anticipated limitations as to grasping were incorporated in Plaintiff's residual functional capacity through the inclusion of a restriction for handling. *See Cooper v. Astrue*, 2008 WL 50897, at *3 (E.D. Cal. Feb. 22, 2008) ("Grasping and handling are synonymous, according to [Ruling 85-15].").

As to the need for a restriction for reaching, Social Security Ruling 85-15 identifies reaching, handling, fingering, and feeling as "*progressively finer* usage of the upper extremities to perform work-related activities" for purposes of assessing postural-manipulative impairments. *Id.* (emphasis added). To the extent that reaching, handling, fingering, and feeling are "progressively finer" actions, a restriction for handling and fingering would, necessarily, address limitations as to reaching. *See Stoffel v. Colvin*, 2013 WL 2318812, at *7-8 (D. Or. May 28, 2013) (adopting magistrate judge's finding and recommendation that noted the progressive nature of SSR 85-15 and concluded that reaching and handling are "intertwined" where administrative law judge includes restriction for handling). In this sense, Ruling 85-15's progressive nature with respect to the actions recognizes that, within the context of work-related activities, one would not reach for the sole purpose of reaching but instead reaches to handle, finger, or feel something. Thus, ALJ Pang's inclusion of a limitation for only frequent handling and fingering necessarily also effectively limited Plaintiff as to reaching.

14

Finally, with respect to feeling, as with the aforementioned reasons for why separate restrictions for grasping and reaching were not required, ALJ Pang's decision adequately explains why no additional restrictions beyond a restriction for handling and fingering were included in Plaintiff's residual functional capacity. Relying on Dr. Whitaker's opinion, ALJ Pang noted that Plaintiff "had relatively normal ranges-of-motion." (Tr. 79 (citing Tr. 471 (noting (1) flexion and rotation of the cervical spine within normal limits; (2) elevation, abduction, and adduction of the shoulders within normal limits; (3) 5/5 strength and normal muscle bulk and tone in the upper extremities; and (4) 5/5 grip strength, bilaterally))). ALJ Pang also noted that Plaintiff had "normal sensation." *Id*. (citing Tr. 471). Accordingly, where Dr. Whitaker's opinion about limitations as to reaching, feeling, and grasping was based on Plaintiff's subjective reports of pain, ALJ Pang was permitted to discount the proposed limitations after concluding that Plaintiff's statements about the extent of her pain and resulting limitations were not credible in light of the objective tests. *See Craig*, 76 F.3d at 595-96 (administrative law judge may discredit claimant's subjective statements where they conflict with objective tests). Therefore, ALJ Pang cited sufficient evidence in the record to support a decision not to include restrictions beyond a restriction for only frequent handling and fingering.

Second, Plaintiff contends that ALJ Pang did not explain his decision not to include restrictions in Dr. Smith's opinion despite giving Dr. Smith's opinion some weight. (Doc. 10 at 7-11). Plaintiff's contention as to Dr. Smith's opinion is without merit. ALJ Pang provided several reasons for discounting the more extensive limitations in Dr. Smith's opinion. (Tr. 81). Most notably, ALJ Pang found that Dr. Smith's proposed limitations were inconsistent with the course of treatment he prescribed for Plaintiff. *Id.* Underscoring ALJ Pang's reasoning, portions of the record cited to by ALJ Pang show that Dr. Smith prescribed little therapeutic treatment for

15

Plaintiff's alleged pain, counseling Plaintiff to "exercise," "get out and do something," and "stay active." (Tr. 493-504, 513-30). Meanwhile, the "Physical Capacities Evaluation" form Dr. Smith completed to assist Plaintiff with her claim for disability benefits notes that Plaintiff suffered from disabling fatigue that prevented her from exercising or doing even sedentary work and that her physical limitations necessitated restrictions including never climbing, stooping, kneeling, crouching, crawling, or pushing or pulling.[7] (Tr. 488-90). This irreconcilable discrepancy constitutes substantial evidence for ALJ Pang's decision to discount Dr. Smith's opinion and not include the restrictions in Dr. Smith's evaluation in Plaintiff's residual functional capacity.

    iii.    *Mental Functioning Restrictions*

Plaintiff contends that ALJ Pang erred by failing to include any mental functioning restrictions despite finding, at Step Two, that Plaintiff experienced mild limitations with or in social functioning, daily activities, and concentration, persistence, and pace. (Doc. 10 at 11-16). The Commissioner, in part, argues that ALJ Pang's conclusion that none of Plaintiff's mental conditions constitute severe impairments defeats any need for mental functioning restrictions and that the record does not contain any evidence that Plaintiff experienced restrictions as to her mental functioning. (Doc. 12 at 11-13).

ALJ Pang's discussion in his residual functional capacity analysis regarding the lack of any need for restrictions to account for any mental limitations is far from ideal as ALJ Pang's discussion is brief and the reasoning supporting his conclusion is scattered throughout his decision. (*See* Tr. 80). For the most part. ALJ Pang's discussion of mental limitations within his residual

---

[7] Emblematic of the discrepancies between Dr. Smith's treatment notes and the Physical Capacities Evaluation form he completed, on the very day that Dr. Smith completed the "Physical Capacities Evaluation" form, his treatment plan for Plaintiff includes encouraging her to "stay active." *Compare* Tr. 489 (form dated Jan. 25, 2013), *with* Tr. 500 (treatment plan notes from Jan. 25, 2013 visit discussing encouraging Plaintiff to "stay active"). Additionally, nine months after completing the "Physical Capacities Evaluation" form, Dr. Smith's treatment plan continued to include encouraging Plaintiff to exercise. *Compare* Tr. 489 (dated Jan. 25, 2013), *with* Tr. 527 (Oct. 30, 2013 office visit).

16

functional capacity assessment is limited to the statement: "[a]s I previously find [Plaintiff's] affective disorders not severe, I assign no limitations based on her cognitive allegations." *Id.* In isolation and on a different record, the conclusory nature of ALJ Pang's discussion would not satisfy the duty placed on an administrative law judge to perform a function-by-function analysis and explain how the evidence supports the administrate law judge's conclusions regarding the claimant's residual functional capacity and would, further, require remand. *Cf. Mascio*, 780 F.3d at 636 (citing SSR 96-8p). Here, however, ALJ Pang's earlier statements about Plaintiff's mental functioning provides this Court with a sufficient basis to meaningfully review ALJ Pang's conclusion. Furthermore, ALJ Pang's decision provides adequate reasons for his decision to discredit Dr. Smith's opinion and Plaintiff's testimony, the only evidence in the record that tended to support Plaintiff's need for mental restrictions. *See id.* (concluding that remand for failing to perform function-by-function analysis only necessary if the unaddressed function was relevant as the result of contradictory evidence on the function).

Although the Step Two analysis is distinct from a residual functional capacity assessment, *see* SSR 96-8p, an administrative law judge need not repeat his factual findings at each step of the analysis and a court may rely on findings by an administrative law judge at an earlier step in the analysis to conclude that the administrative law judge's residual functional capacity assessment is supported by substantial evidence, *see Six v. Colvin*, 2016 WL 7040850, at *5 (S.D.W.Va. Dec. 1, 2016). In concluding that neither Plaintiff's anxiety nor her depression qualified as a severe impairment, ALJ Pang found that Plaintiff suffered from anxiety and depression prior to 2012, when she was still working. (Tr. 76). ALJ Pang also found that Plaintiff's anxiety and depression were controlled by medication. (Tr. 76); *cf. Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

17

Finally, ALJ Pang noted that Plaintiff did not seek treatment from a mental health specialist and concluded that Plaintiff's failure to seek treatment was an "indicat[ion] that [Plaintiff] does not feel her symptoms significantly restrict her." (Tr. 76; *see also* Tr. 77, 81). These findings provide substantial evidence for ALJ Pang's decision not to include any restrictions for mental functioning.[8]

Even if ALJ Pang failed to properly explain his reason for not including any mental functioning restrictions, the error would be harmless and would not require remand. Notably, Plaintiff, in her memorandum in support of summary judgment, does not cite any evidence in the record suggesting that she suffers from mental limitations requiring a restriction. (*See* Doc. 10 at 11-16). Furthermore, after the Commissioner pointed out this deficiency in Plaintiff's argument, (*see* Doc. 12 at 11-13), Plaintiff did not file a response/reply brief identifying what evidence in the record placed Plaintiff's mental functioning at issue. ALJ Pang essentially touched on this lack of evidence several times in his decision by noting that Plaintiff did not seek mental health treatment and that "throughout 2013, [Plaintiff's] mental status examinations note her for intact cognition, appropriate mood and affect and normal judgment." (Tr. 76). Furthermore, neither Dr. Whitaker's evaluation nor Dr. Smith's evaluation included any restrictions based on Plaintiff's anxiety or

---

[8] To the extent Plaintiff argues that ALJ Pang concluded that Plaintiff suffered from mild limitations with social function, daily activities, and concentration, persistence, and pace, it is not entirely apparent that ALJ Pang reached this conclusion. While ALJ Pang stated such in the midst of his psychiatric review technique analysis, he commenced and concluded his psychiatric review technique analysis by stating that Plaintiff experienced "no more than mild limitations" as to those criteria. (Tr. 78; *see also* Tr. 77 ("The claimant's medically determinable mental impairments of anxiety and depression, considered singly and in combination, *do not cause more than minimal limitation* in the claimant's ability to perform basic mental work activities . . . ." (emphasis added))). ALJ Pang's use of the phrase "no more than" and "do not cause more than" suggest that he did not reach a firm conclusion as to whether Plaintiff experienced no limitations or mild limitations. Nor did ALJ Pang need to reach such a conclusion for purposes of Step Two since a finding of only mild limitations is insufficient to support a severe impairment. In any event, contrary to Plaintiff's suggestion, an administrative law judge's finding at Step Two that a claimant experiences mild limitations as to the aforementioned criteria does not necessitate the inclusion of a restriction in the claimant's residual functional capacity. *See Watkins v. Comm'r of Soc. Sec.*, 2016 WL 4445467, at *3 (D. Or. Aug. 22, 2016).

depression.[9] (*See* Tr. 468-72, 488-92). Thus, Plaintiff has not demonstrated that her mental functioning was contested for purpose of the harmless error analysis under *Mascio*.

## III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1) Plaintiff's Motion for Summary Judgment (Doc. 9) is **DENIED**;

(2) Defendant's Motion for Summary Judgment (Doc. 11) is **GRANTED**; and

(3) The decision of the Commissioner is **AFFIRMED**.

Signed: June 12, 2017

Richard L. Voorhees
United States District Judge

---

[9] Dr. Smith's evaluation did note that Plaintiff suffered from moderate issues with concentration, persistence, and pace but attributed this to her physical ailments rather than her anxiety or depression. (Tr. 491). Furthermore, even if Dr. Smith's evaluation is evidence putting Plaintiff's mental functioning at issue, ALJ Pang adequately explained why he did not credit Dr. Smith's opinion, including specifically finding that Dr. Smith was "not a mental health expert" and crediting the contrary opinion of Dr. W.W. Albertson because Dr. Albertson was "a specialist in mental health." (Tr. 81).